UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NEW YORK LEGAL ASSISTANCE GROUP, INC.,

                Plaintiff,

     -against-

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT, UNITED STATES
CUSTOMS AND BORDER PROTECTION, UNITED
STATES SECRET SERVICE, FEDERAL
PROTECTIVE SERVICES, AND OFFICE OF
INTELLIGENCE AND ANALYSIS,

                Defendants.
-------------------------------------------------------------------X

Docket No.: _____

**COMPLAINT FOR
INJUNCTIVE RELIEF**

## PRELIMINARY STATEMENT

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, brought by Plaintiff New York Legal Assistance Group, Inc. ("NYLAG") for injunctive and other appropriate relief seeking to compel Defendants United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), United States Customs and Border Protection ("CBP"), United States Secret Service ("USSS"), Federal Protective Services ("FPS"), and Office of Intelligence and Analysis ("I&A" and collectively, "Defendants") to release public records and information, in their entirety, unlawfully withheld from Plaintiff in response to NYLAG's FOIA request dated September 29, 2020 ("FOIA Request").

2.      The killing of George Floyd sparked protests against police brutality across the country, including in New York City. In June 2020, a protestor was violently arrested while participating in a protest on the Upper West Side of New York City. The officer who made the

arrest in question was identified as an agent for ICE or Homeland Security Investigations ("HSI"), an operational directorate within ICE.

3.     The deployment of federal immigration enforcement agents in New York City raised several serious concerns, including the authority of the federal government to deploy federal agents to monitor local protests and surveil immigrant protestors.  In light of these concerns, and as part of NYLAG's efforts to ensure free speech regardless of one's racial or ethnic identity, and to inform the public about ICE and HSI practices that might affect exercise of that free speech, on September 29, 2020, NYLAG submitted the FOIA Request to DHS and ICE.  The FOIA Request sought critical records related to the deployment of federal law enforcement personnel in New York City between May 25, 2020 and September 29, 2020.

4.     Following the FOIA Request, NYLAG received a handful of communications from DHS, ICE, CBP, USSS, and I&A, some indicating—within a few weeks of NYLAG's request—that responsive records had been found.  Inexplicably, however, to this date none of the Defendants has produced a single document in response to the FOIA Request.  NYLAG appealed these constructive denials, and obtained two Final Appeal Decisions ordering the agencies to respond. Nonetheless, to date, no Defendant has provided a single document.

5.     NYLAG has exhausted its administrative remedies and files this lawsuit seeking injunctive relief ordering Defendants to immediately process and release the requested documents that have been improperly withheld and enjoining Defendants from assessing fees for processing the FOIA Request.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), as the United States District Court in the district in which NYLAG resides and has its principal place of business, and pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in the Southern District of New York pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff's principal place of business is there.

**PARTIES**

8.      Plaintiff NYLAG is a not-for-profit legal services corporation with its principal place of business at 100 Pearl Street, New York, New York.

9.      NYLAG provides high-quality, free, civil legal services to New Yorkers experiencing poverty, many of whom are immigrants.  NYLAG's services include representing noncitizens in immigration proceedings.  NYLAG represents over 300 immigrants each year in removal defense proceedings.  NYLAG also provides financial empowerment, policy advocacy, and community partnerships.  In addition, NYLAG disseminates information about immigration enforcement, immigration benefits, and the rights of immigrants, and conducts Know Your Rights presentations in communities around New York City to educate and to protect the rights of immigrants.

10.     Defendant DHS is a department within the executive branch of the United States government, with its principal place of business at 2707 Martin Luther King Jr. Ave. SE, Washington, D.C.  DHS is responsible for public security in the United States, and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

11.     DHS is made up of various operational and support components, including Defendants ICE, CBP, USSS, FPS, and I&A.  ICE is a federal law enforcement agency under

DHS. ICE's stated mission is "to protect the United States from the cross-border crime and illegal immigration that threaten national security and public safety."[1] CBP is the largest federal law enforcement agency of DHS and is the country's primary border control organization.[2] USSS is one of the oldest federal law enforcement agencies under the DHS and charged with conducting criminal investigations and protecting U.S. political leaders, their families, and visiting heads of state or government.[3] FPS is the uniformed security police division of DHS.[4] I&A is an intelligence element within DHS and one of the members that comprise the United States Intelligence Community.[5]

## FACTUAL BACKGROUND

### I.    DHS's Involvement in Local Protests in New York City

12.    In the wake of the May 25, 2020 murder of George Floyd, protestors rallied against police violence across the United States, including in New York City. Publicly available information suggests that federal agents, including ICE and HSI officers, engaged in monitoring and surveillance of these protests and coordinated with local authorities to make violent arrests of protestors.

13.    For example, in early June 2020, a U.S. citizen (and army veteran) was violently arrested by ICE and/or HSI officers while participating in a protest on the Upper West Side of New York City. An ICE official confirmed that its agents were involved in the arrest.[6] In a statement to CNN, ICE admitted that its "personnel and Special Response Teams have been deployed to

---

[1] https://www.ice.gov/
[2] https://www.cbp.gov/about
[3] https://sgp.fas.org/crs/homesec/RL34603.pdf
[4] https://www.dhs.gov/federal-protective-service
[5] https://www.dhs.gov/office-intelligence-and-analysis
[6] Mazin Sidahmed, *Video Shows ICE Agents Arresting a Protester in NYC*, Documented (June 5, 2020), https://documentedny.com/2020/06/05/video-shows-ice-agents-arresting-a-protestor-in-nyc/.

protect agency facilities and assets in support of the Federal Protective Service and assist local, state and federal law enforcement partners, as needed."[7]

14.     The deployment of law enforcement personnel from ICE and HSI raises a number of serious concerns that NYLAG sought to address with its FOIA Request.

15.     First, it is unclear what legal authority, if any, the federal government had to deploy ICE and HSI personnel to New York City.

16.     Second, although an ICE spokesperson stated that ICE personnel would not be conducting immigration enforcement, ICE did not make clear whether ICE personnel would be conducting surveillance, collecting information, or performing other law enforcement functions in addition to protecting agency facilities and assisting local law enforcement.[8]  ICE did not make clear how it intended to use any information ICE personnel did collect.

17.     Third, the presence of ICE personnel, who are routinely associated with conducting immigration raids, may deter minorities and immigrants from exercising their First Amendment rights to peacefully protest.

## II.     NYLAG's FOIA Request

18.     In light of these concerns, on September 29, 2020, NYLAG submitted the FOIA Request to DHS and ICE.  (Exhibit A.)  The FOIA Request seeks records relating to the involvement of ICE, HSI, or any other DHS components and personnel in protests that occurred in New York City between May 25, 2020 and September 29, 2020 (the date of the FOIA Request). The FOIA Request sets forth the following nine specific categories of documents:

> i.     Records relating to the authorization of ICE, HSI, or any other DHS personnel to respond to, assist in responding to, and/or support other

---

[7] Priscilla Alvarez, *ICE deploying personnel and teams nationwide in response to protest unrest*, CNN (June 1, 2020), https://www.cnn.com/us/live-news/george-floyd-protests-06-01-20/h_0871e84fa1e97f5df617c4fe7880de7e.
[8] *Id.*

law enforcement efforts related to Protests occurring in New York City between May 25, 2020, and the date of this request.  This includes policies, operating procedures, rules, internal policy guidance, training materials, monitoring mechanisms, email messages, legal opinions or memoranda.

ii.     Records relating to any questioning, arrest, or surveillance activities of ICE, HSI, or any other DHS personnel related to Protests occurring in New York City between May 25, 2020, and the date of this request. This includes the presence of ICE HSI agents outside or around New York Police precincts, any limitations placed on ICE's info-gathering associated with such activities, any information or datasharing between NYPD and DHS/ICE.

iii.    Any and all records relating to the process ICE, HSI, or DHS use or have used to determine targets for Surveillance at Protests occurring in New York City between May 25, 2020, and the date of this request, including any Target Lists.  Such records include, but are not limited to, the following:

- Manuals, policies, or other guidance describing the use of CLEAR database in ICE operations;
- Any and all records, including slides or other materials from trainings, on how target lists are built or created, including the keywords "TRSS" or "Thomson Reuters" or "CLEAR";
- Target lists sent from ICE to Thomson Reuters/TRSS and Thomson Reuters/TRSS response to those lists, including information regarding all personal data [9] searched and lists of all targets confirmed or rejected as "false positives";
- All related communications between ICE and Thomson Reuters/TRSS including responses by ICE to the target lists.

iv.     Any Communications or Agreements with Local Government in New York City, including but not limited to the NYPD, relating to the deployment of ICE, HSI, or DHS personnel, equipment, and/or resources to support law enforcement efforts in New York City. Please also provide a list of all divisions of New York City Local Government (including, but not limited to, any task forces within the NYPD) that have Agreements with ICE, HSI, or DHS.

v.      Communications or Agreements between ICE, HSI, or DHS, on the one hand, and Local Government in New York City, such as the NYPD, on the other hand, relating to the deployment of ICE, HSI, or DHS personnel, equipment, and/or resources to support law

---

[9] NYLAG is not requesting personal information for individuals on this list.

enforcement efforts undertaken in connection with Protests occurring in New York City between May 25, 2020, and the date of this request.

vi.    Presentations or other documents distributed in connection with meetings and/or teleconferences between ICE, HSI, or DHS personnel and Local Government in New York City, such as the NYPD. Such Records include, but are not limited to, meeting agenda, meeting minutes, presentations or other materials distributed either in electronic format or hardcopy to meeting participants, and any other materials used by or shown to meeting participants.

vii.    Any Communications between ICE, HSI, or DHS personnel and private security companies or personnel relating to the deployment of ICE, HSI, or DHS personnel, equipment, and/or resources to support law enforcement efforts undertaken in connection with Protests occurring in New York City between May 25, 2020, and the date of this request.

viii.    Records relating to information that ICE, HSI, or DHS personnel collected or sought to collect from protesters before, during, and after Protests occurring in New York City between May 25, 2020 and the date of this request, including the intended use of such Records.

ix.    Records relating to any arrests conducted by ICE, HSI, or other DHS personnel at Protests occurring in New York City between May 25, 2020, and the date of this request. Please redact any personally identifying information (such as names, social security numbers, addresses, and phone numbers) from the arrest records, but not a report of the arrest incident and other non-personally identifying information. For purposes of this request, arrest records include Field Operations Worksheet, or Form I-213.

19.    On October 5, 2020, the DHS Privacy Office acknowledged receipt of the FOIA Request, assigned tracking number 2021-HQFO-00013, conditionally granted NYLAG's fee waiver, and invoked the statutory ten-day extension for unusual circumstances in 6 C.F.R. Part 5 § 5.5(c). (Exhibit B.) In addition, the DHS Privacy Office stated that it had referred the FOIA Request to the FOIA officers for CBP, USSS, and FPS. (*Id.*)

20.    Also on October 5, 2020, CBP acknowledged receipt of the FOIA Request, assigned tracking number CBP-2021-000784, and invoked the statutory ten-day extension. (Exhibit C.) NYLAG has not received any further correspondence from CBP.

7

21.    On October 7, 2020, USSS acknowledged receipt of the FOIA Request, assigned tracking number USSS-20210010, granted expedited treatment for the FOIA Request, and held the request for fee waiver in abeyance pending the collection of responsive records. (Exhibit D.)

22.    On October 15, 2020, USSS replied again, and noted that after conducting "a reasonable search for all potentially responsive documents," some "records were located." (Exhibit E.)   USSS stated that it would process the records and mail them to NYLAG upon completion.  As of the date of this Complaint, NYLAG has not received any records from USSS, nor has NYLAG received any further correspondence from USSS.

23.    On October 20, 2020, ICE acknowledged receipt of the FOIA Request, assigned tracking number 2021-ICFO-04458, and invoked the statutory ten-day extension for unusual circumstances in 6 C.F.R. Part 5 § 5.5(c).  (Exhibit F.)  NYLAG has not received any further correspondence from ICE.

24.    On December 16, 2020, I&A acknowledged receipt of the FOIA Request, assigned tracking number 2021-IAFO-00006, and provided what purported to be a "final response" to the FOIA Request.  (Exhibit G.)  However, the letter paraphrased only one of NYLAG's nine document requests.  (*Id.*)  The letter further stated that I&A had conducted an "adequate search," that "no records responsive to [the FOIA Request] were found," and that NYLAG may appeal I&A's decision.  (*Id.*)  It was unclear whether the "adequate search" was only for the single category of documents, or all nine of the categories in NYLAG's FOIA Request.

25.    NYLAG responded to I&A's letter on February 2, 2021.  (Exhibit H.)   In its response, NYLAG asked I&A whether its December 16, 2020 "final response" was sent on behalf of all DHS agencies, including ICE, CBP, USSS, and FPS.  (*Id.*)  NYLAG also objected to I&A's oversimplified summary of the FOIA Request and sought clarification regarding the scope and

methods of I&A's search. (*Id.*) Finally, NYLAG stated that if I&A did not respond within 15 days, NYLAG would begin the appellate procedure outlined in 6 C.F.R. § 5.8. (*Id.*) As of the date of this Complaint, I&A has not responded to NYLAG's request for clarification.

26.     On February 11, 2021, NYLAG received another letter from the DHS Privacy Office, muddling I&A's February 2 letter. (Exhibit I.) The DHS Privacy Office stated that NYLAG would receive a "final response" directly from I&A and the DHS Privacy Office. (*Id.*)

27.     It was unclear if the DHS Privacy Office's letter was in response to NYLAG's clarification request. The February 11 letter from the DHS Privacy Office further stated that it had "located some potentially responsive records" that were "queued [for] processing," and that I&A was "in the process of searching for potentially responsive records" (despite the fact that I&A's December "final response" stated that no responsive records were found). (*Id.*) As of the date of this Complaint, the DHS Privacy Office has not produced any documents to NYLAG.

## III.   NYLAG's FOIA Appeal

28.     Despite the DHS Privacy Office, CBP, I&A, USSS, and ICE acknowledging NYLAG's FOIA Request, none of the offices provided any responsive records to NYLAG. The USSS and DHS Privacy Office's failures are particularly egregious because both offices represented to NYLAG that responsive records were located.

29.     Defendants failed to provide any information on how they searched for responsive records, what search methods were used, or what locations were searched, thus providing no information for NYLAG to assess whether Defendants' search (assuming such a search took place) was adequate. Defendants' responses suggested that they were evading their legal obligations under FOIA to properly and timely respond to the FOIA Request.

30.     On April 12, 2021, lacking any further response from any of the Defendants, NYLAG filed an administrative appeal of I&A's "final response" and the other Defendants' failures to timely respond or produce documents pursuant to 5 U.S.C. § 552(a)(6) and 6 C.F.R. § 5.8(a)(1).  (Exhibit J.)

31.     In its appeal, NYLAG requested that I&A immediately conduct an adequate search, disclose all responsive records, and provide a response to NYLAG's February 2, 2021 clarification letter.  (*Id.*)  NYLAG also requested that all other DHS agencies that have acknowledged the FOIA Request promptly conduct an adequate search and produce responsive records.  (*Id.*)

32.     Almost five months after NYLAG submitted the appeal, on September 3, 2021, NYLAG received by email two letters from the DHS FOIA Litigation, Appeals, Policy and Training department ("Litigation and Appeals").  (Exhibits K and L.)  Litigation and Appeals assigned tracking number 2021-HQAP-00226 for NYLAG's appeal regarding the adequacy of I&A's search (2021-IAFO-00006), and tracking number 2021-HQAP-00227 for NYLAG's appeal regarding the other DHS agencies' failure to respond (2021-HQFO-00013, CBP-2021-000784, USSS-20210010, and 2021-ICFO-04458).  The letters stated that NYLAG could check the status of the appeal online.

33.     On February 4, 2022, a Hearing Docket Clerk from the U.S. Coast Guard communicated via email alerting NYLAG that an FOIA Appeal Decision had been issued by John C. Johns for 2021-HQAP-00226.  (Exhibit M.)  The decision stated that I&A had 30 days to provide an explanation to the appeal officer regarding the FOIA Request.  (*Id.*)  At that time, the 2021-HQAP-00226 appeal was marked as closed.  The second appeal, 2021-HQAP-00227 (regarding the other agencies' non-responsiveness) was still marked as "assigned for processing."

34.    On March 10, 2022, Tommy B. Cantrell, the FOIA Appeals Officer assigned to decide NYLAG's 2021-HQAP-00226 appeal, contacted NYLAG via email and requested a phone call. (Exhibit N.) On March 21, 2022, counsel from NYLAG spoke by phone with Officer Cantrell and confirmed that NYLAG had received no documents from any DHS component.  Although the 20-day response period had lapsed, NYLAG indicated that it would consider the administrative appeals exhausted and its claims ripe for judicial review if it received no response by April 18, 2022.

35.    On April 4, 2022, NYLAG received via email a Final FOIA Appeal Decision issued by John C. Johns for 2021-HQAP-00226.  (Exhibit O.)  The letter alerted NYLAG that I&A had been directed to respond to NYLAG's FOIA Request within 15 days and I&A had failed to do so. (*Id.*)  Per the letter, I&A's failure to comply constituted a final agency action. (*Id.*)

36.    On April 27, 2022, a Hearing Docket Clerk from the U.S. Coast Guard communicated via email alerting NYLAG that an FOIA Appeal Decision had been issued by "the Houston/Galveston office" for 2021-HQAP-00227.  (Exhibit P.)  The decision stated that the DHS Privacy Office had 30 days to provide NYLAG an updated letter advising it of the status of NYLAG's FOIA Request.  (*Id.*)  NYLAG did not receive such a letter.

37.    On June 10, 2022, counsel from NYLAG emailed Officer Cantrell, the FOIA Appeals Officer assigned to decide NYLAG's 2021-HQAP-00227 appeal, to request that a Final FOIA Appeal Decision be issued as to 2021-HQAP-00227.  (Exhibit Q.)  NYLAG indicated that it considered all administrative appeals exhausted and its claim ripe for judicial review.  (*Id.*)

38.    On June 29, 2022, NYLAG received via email a Final FOIA Appeal Decision issued by John C. Johns for 2021-HQAP-00227.  (Exhibit R.)  The letter alerted NYLAG that the DHS Privacy Office had been directed to respond to NYLAG's FOIA Request within 30 days and

had failed to do so.  (*Id.*)  Per the letter, the DHS Privacy Office's failure to comply constituted a final agency action.  (*Id.*)

39.     As of the date of this Complaint, NYLAG has not received any documents or further correspondence in connection with the FOIA Request (including the requests assigned tracking numbers 2021-HQFO-00013, CBP-2021-000784, USSS-20210010, 2021-ICFO-04458, and 2021-IAFO-00006, and the appeals assigned tracking numbers 2021-HQAP-00226 and 2021-HQAP-00227).

**IV.     NYLAG Commences This Litigation to Compel Defendants to Fulfill Their FOIA Obligations**

40.     By any measure, Defendants' response to NYLAG's FOIA Request is long overdue.  Under FOIA, an agency must determine whether to comply with the request and notify the requester within twenty working days.  *See* 5 U.S.C. § 552(a)(6)(A)(i).  And DHS's own regulations provide that the time limit for responding to an FOIA appeal is twenty working days.  *See* 6 C.F.R. § 5.8(d).

41.     Nearly two years after the DHS agencies acknowledged the FOIA Request—and some acknowledged possession of responsive documents—NYLAG has not received a single document from Defendants or even an explanation of what search they conducted.  Thus, Defendants have failed to comply with the time limits imposed by the FOIA statute and DHS's own rules.  The current status of the communications with each Defendant is as follows:

- The DHS Privacy Office acknowledged receipt of NYLAG's FOIA Request and assigned a tracking number on October 5, 2020.  (Exhibit B.)  Despite informing NYLAG that it had "located some potentially responsive records" that were "queued [for] processing," the DHS Privacy Office never produced a single document or communicated to NYLAG regarding the status of its "processing."  (Exhibit I.)  Even after being directed by an FOIA

12

Appeal Officer to advise NYLAG of the status of the FOIA Request, the DHS Privacy Office continues to evade the FOIA Request.  (Exhibits P and R.)

- CBP acknowledged receipt of NYLAG's FOIA Request on October 5, 2020, and invoked the ten-day extension permitted by Title 5 U.S.C. § 552(a)(6)(B).  (Exhibit C.)  That deadline has long passed and CBP has not communicated further.

- USSS acknowledged receipt of NYLAG's FOIA Request on October 7, 2020, and granted NYLAG's request for expedited processing.  (Exhibit D.)  On October 15, 2020, USSS wrote a letter to NYLAG indicating "the Secret Service FOIA Office searched all Program Offices that were likely to contain potentially responsive documents, and *records were located.*"  (Exhibit E) (emphasis added).  In that letter, USSS indicated that it was processing the responsive records and the documents would be mailed to NYLAG in accordance with FOIA.  NYLAG has not received any records from USSS.

- ICE acknowledged receipt of NYLAG's FOIA Request on October 20, 2020, and invoked the ten-day extension.  (Exhibit F.)  ICE has not communicated further.

- I&A purported to provide a "final response" to NYLAG's FOIA Request on December 16, 2020, but that determination letter was devoid of any details regarding I&A's search process, nor did it even indicate whether the response covered all nine of NYLAG's requests or only the single topic identified in I&A's letter.  (Exhibit G.)  Further, after I&A's "final response," the DHS Privacy Office informed NYLAG that I&A was still in the process of locating potentially responsive records, thus contradicting I&A's own assertion that the search was completed. (Exhibit I.)  I&A also failed to provide a response to NYLAG's clarification request or NYLAG's appeal.  Even after being directed by an FOIA Appeals Officer to respond, I&A continues to evade the FOIA Request.  (Exhibit O.)

13

42.    NYLAG has exhausted all administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(C)(i). Accordingly, NYLAG now seeks this Court's involvement to compel Defendants to comply with FOIA and immediately process and release the requested information.

43.    The fees for responding to the FOIA Request should be waived.  Under FOIA, an agency "shall not assess any search fees" if the agency fails to respond to a request for documents within the time frame required by the statute.  5 U.S.C. § 552(a)(4)(A)(viii)(I).  DHS's own regulations require DHS to respond within the required time limit or to waive search fees.  6 C.F.R. § 5.11(d)(2).

44.    Fees should also be waived or reduced pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) on the ground that disclosure of the requested information is (1) in the public interest because it is likely to contribute significantly to public understanding of the presence of ICE and HSI agents at protests in New York City and DHS's coordination with local law enforcement, and (2) not primarily in the commercial interest of the requester given that NYLAG is a nonprofit organization dedicated to providing free legal services to low-income New Yorkers.

**CAUSE OF ACTION**
**COUNT I**
**VIOLATION OF FOIA, 5 U.S.C. § 552**

45.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

46.    On September 29, 2020, NYLAG submitted a request under FOIA to DHS and ICE for records in their possession, custody, and control.  DHS, ICE, CBP, USSS, and I&A acknowledged receipt of the FOIA Request.

47.    Defendants are all agencies subject to and within the meaning of FOIA and therefore must make reasonable efforts to search for requested records.

48.     Defendants have failed to conduct an adequate search in response to NYLAG's FOIA Request.

49.     Defendants have never invoked an exemption to production.

50.     Defendants have failed to respond substantively, conduct adequate searches, or produce a single document within the statutory deadlines.  By failing to respond to NYLAG's request within the statutorily prescribed time limit, Defendants have violated their duties under FOIA and DHS's own regulations implementing FOIA.  These duties include, but are not limited to, the duties to process NYLAG's FOIA Request expeditiously, to notify NYLAG of their determination and justifications, to conduct an adequate search for responsive records, and to produce non-exempt responsive records.

51.     Pursuant to FOIA, Plaintiff is entitled to injunctive and declaratory relief, as well as costs, expenses, and attorneys' fees.

**<u>REQUEST FOR RELIEF</u>**

WHEREFORE, the Plaintiff requests that this Court:

(1)     Declare that Defendants' failure to produce the records requested by NYLAG is unlawful;

(2)     Order Defendants to immediately conduct a thorough search for any and all records responsive to NYLAG's FOIA Request using search methods reasonably likely to lead to discovery of all responsive records;

(3)     Order Defendants to immediately process and release any responsive records in their entirety and make copies available to NYLAG;

(4)     Enjoin Defendants from charging NYLAG search, review, or duplication fees for the processing of its request;

(5)    Retain jurisdiction of this action until Defendants provide complete responses, to ensure that no agency records are wrongfully withheld;

(6)    Award NYLAG its costs, expenses, and reasonable attorneys' fees, and other disbursements for this action pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

(7)    Grant such other and further relief as the Court may deem just and proper.

Dated: July 12, 2022
       New York, New York

COOLEY LLP

By:    _/s/ Marc Suskin_____
           Marc Suskin

Marc Suskin
Bingxin Wu
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Fax: (212) 479-6275
Email: msuskin@cooley.com
        bwu@cooley.com

Julianne Landsvik
500 Boylston Street
Boston, MA 02116--3736
Telephone: (617) 937-2300
Fax: (617) 937-2400
Email: jlandsvik@cooley.com

NEW YORK LEGAL ASSISTANCE GROUP

Danielle Tarantolo
Julia Russell
Melissa Chua
Lauren Reiff
100 Pearl Street
New York, NY 10004
Telephone: (212) 613-5000
Fax: (212) 750-0820
Email: dtarantolo@nylag.com
        jrussell@nylag.com
        mchua@nylag.com
        lreiff@nylag.com

*Attorneys for Plaintiff*

16